OPINION OF THE COURT
Dennis K. McDermott, J.
*903 The defendant moves to reargue his sex offender risk assessment primarily on the ground that the assessment was made without any investigation or recommendation from the Board of Examiners of Sex Offenders (hereinafter, the Board).
On October 7, 2008, this court adjudicated the defendant to be a level two (“moderate risk”) sex offender. Previously, he had been convicted on his plea of guilty to one count of course of sexual conduct against a child, second degree, a class D felony under Penal Law § 130.80. In his allocution, the defendant admitted engaging in a series of incidents of hand-to-vagina contact by him, then age 18, against his cousin, then age 11.
Defendant was sentenced on June 3, 2008. The court had reviewed a detailed presentence investigation report prepared by the Madison County Probation Department prior to imposing sentence. Consistent with the terms of the plea agreement, the defendant was sentenced to a “felony split,” i.e., six months of incarceration and 10 years of probation. On May 29, in apparent anticipation that the court would make the defendant’s Sex Offender Registration Act (SORA) assessment at the time of sentencing, counsel for the defendant submitted to the court a “proposed SORA scoring” in which he believed the facts warranted a risk assessment score of only 50 points which, if adopted by the court, would result in a finding that the defendant posed a low (level one) risk of reoffending. No objection was raised at that time to the lack of any input by the Board.
On September 5, the court prepared a draft risk assessment instrument (RAI) and forwarded a copy to the prosecutor and defense counsel for their consideration. On October 2, the District Attorney provided the court and defense counsel with his draft RAI, and the matter came on for the risk assessment hearing on October 7.
At no time prior to or during the risk assessment hearing did the defendant object to the absence of a recommendation by the Board. The court considered all the relevant facts and arguments and, in a written decision, concluded that a total of 90 points would be an accurate risk assessment score on the RAI and that led to the presumptive conclusion that the defendant poses a moderate, or level two, risk of reoffense.
As originally enacted, the Sex Offender Registration Act (Correction Law art 6-C) provided that if a sex offender was sentenced to a period of incarceration, “the Board must investigate his background and history and provide a recommendation to the sentencing court.” (People v Brown, 174 Misc *904 2d 941, 942 [Sup Ct, Bronx County 1997].) Where the defendant had been sentenced to probation, a conditional discharge or some other sentence not involving incarceration, then the court was authorized to proceed to make a risk assessment without the Board’s assistance.[1] Brown specifically involved a case where the defendant received a split sentence and the court concluded, under existing statutory provisions, that “a split sentence must be considered an incarceratory sentence for the purposes of the Sex Offender Registration Act, and the Board must submit its recommendation to the sentencing court.” (Id. at 944.)
In 1999, the Court of Appeals, citing Brown, observed that the SORA statute “could be interpreted as forging a divide in procedural treatment between defendants who will be incarcerated and those who will not.” (People v Hernandez, 93 NY2d 261, 271 [1999].)
Later in 1999, the Legislature amended several provisions of article 6-C of the Correction Law, including the addition of section 168-a (12) to define “probation,” for purposes of construing the SORA requirements, as meaning not only probation within the meaning of article 65 of the Penal Law but also “a sentence of imprisonment imposed in conjunction with a sentence of probation.” (Emphasis added; see L 1999, ch 453, § 4 [eff Jan. 1, 2000].) Thus, for purposes of conducting a sex offender risk assessment, a defendant receiving a split sentence is deemed to have received a sentence of probation rather than a sentence of incarceration and, therefore, his risk assessment is the duty of the court without the assistance of the Board.
The requirement for the Board to make a recommendation is contained in Correction Law § 168-Z (6), and by its terms it is limited to cases where the defendant will be “discharge[d], parole [d], release [d] to post-release supervision or release [d]” following incarceration. Where the defendant has not been incarcerated, no involvement of the Board is authorized or required.
In support of his argument, the defendant cites People v Black (33 AD3d 981 [2d Dept 2006]), but that case is distinguishable inasmuch as that defendant was sentenced to incarceration for one year without any probation supervision.
*905 This court is aware of the recent case, People v McElhearn (56 AD3d 978 [3d Dept 2008]), in which a defendant who had received a split sentence of 180 days in jail and 10 years of probation supervision had his sex offender risk assessment made without any recommendation from the Board. The court (at 979), in dicta, referred to that omission as an “error,” but noted that the objection had not been preserved for appellate review.
Here, the defendant had been sentenced to probation as that term is defined in Correction Law § 168-a (12) and, following the language of section 168-d (3), this court proceeded to conduct the SORA assessment without any input from the Board. “For offenders sentenced to probation or otherwise discharged without incarceration, the District Attorney provides the court and the offender with a written statement setting forth the determinations sought by the District Attorney.” (People v Black at 981 [emphasis added].) In the absence of clear and on-point authority to the contrary, the court believes that this is the proper procedure.
Defendant argues that despite his risk assessment score, a downward modification to level one would be warranted because in the six years between the dates when his offenses occurred and the time when his crimes came to light there is no proof that he engaged in any other offensive conduct. This court has previously ruled that once a sex offender has been convicted, released from incarceration and completed probation supervision and sex offender treatment, a subsequent prolonged period of lawful behavior could warrant a downward modification. (See People v Witchley, 9 Misc 3d 556 [2005].) That is clearly distinguishable from the circumstances presented here. Therefore, the court finds that there is no clear and convincing proof in the record that would warrant a downward departure from the presumptive risk level arising from this defendant’s risk assessment score. (People v Roe, 47 AD3d 1156 [3d Dept 2008], lv denied 10 NY3d 707 [2008].)
Finally, the defendant argues that his risk assessment was not made within the 60 days immediately prior to his release from jail,[2] thus suggesting that the court was thereafter without authority to make any assessment. That would be directly contrary to the express provision of Correction Law § 168-Z (8) which states,
*906 “A failure by ... a court to render a determination within the time period specified in this article shall not affect the obligation of the sex offender to register or verify under this article nor shall such failure prevent a court from making a determination regarding the sex offender’s level of notification . . . .”
Accordingly, defendant’s motion to vacate his SORA adjudication is denied.

. Correction Law § 168-d (3) provides, “For sex offenders released on probation or discharged upon payment of a fine, conditional discharge or unconditional discharge, it shall be the duty of the court applying the guidelines ... to determine the level of notification . . . .”

. After crediting the defendant with good behavior and time served, the Sheriff released him from the Madison County jail on July 30, 2008.